**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| YANGA J. WILLIAMS, as surviving spouse of FREDERICK JEROME WILLIAMS, deceased, and the ESTATE OF FREDERICK JEROME WILLIAMS, by its Administrator, BRENDA G. BATES, | : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | CIVIL ACTION NO. 1:06-CV-0051-RWS |
| TASER INTERNATIONAL, INC. a Delaware Corporation, GWINNETT COUNTY, GEORGIA, GWINNETT COUNTY SHERIFF R.L. "BUTCH" CONWAY, in his official and individual capacity, ROBERT E. KENYON, in his individual capacity, T.J. TOPOR, in his individual capacity, PRISON HEALTH SERVICES, INC., a Delaware Corporation, STEPHEN C. SMITH, MICHAEL A. MUSTACHIO, in his individual capacity, MARK R. COOK, in his individual capacity, TODD P. BUTORAC, in his individual capacity, and JAMES THOMAS FERGUSON, in his individual capacity, | : : : : : : : : : : : : : : : : : | |
| Defendants. | : : | |

## **ORDER**

Now before the Court are Plaintiffs' Motion for Discovery, Motion to Compel [144];[1] Plaintiffs' Second Motion to Compel Discovery from Defendant Taser International, Inc. [172]; and Plaintiffs' Motion for Extension of Time to Complete Discovery [201]. By Order entered April 18, 2007, the Court directed Plaintiffs to provide, in writing, a specific list of the deficiencies Plaintiffs contend still exist with respect to Taser's discovery responses, and afforded Taser time to supplement its discovery responses to address Plaintiffs' concerns. In addition, the Court directed the parties to confer on the record regarding any issues not resolved by Taser's supplementation, to provide the Court with a list of any issues remaining for consideration upon completion of this meeting, and to appear before the Court for a hearing on those outstanding issues. (See Order of Apr. 18, 2007 [211].) On May 21, 2007, the Court held a hearing during which it heard from Plaintiffs and Taser regarding the many outstanding discovery issues in this case. At the conclusion of that hearing, the

---

[1] While this motion appears on the Court's docket as stated above, for clarity the Court notes that the motion is in fact denominated as "Plaintiffs' Motion for Leave to Serve Additional Interrogatories on Defendant Taser International, Inc. and Motion for an Order Compelling Defendant Taser to Answer Plaintiffs' First Interrogatories."

2

Court directed each party to submit a proposed protocol to govern electronic

discovery in this case, which the parties have now done.  Based on the parties'

filings made in accordance with the Court's April 18, 2007 Order, their

representations to the Court during the May 21, 2007 hearing, as well as their

submissions of electronic discovery protocols made pursuant to the Court's

May 21, 2007 direction, the Court enters the following Order.

## I.    Plaintiffs' Motion for Discovery, Motion to Compel

In their Motion, Plaintiffs make two requests: First, they move for leave

to serve up to 20 additional interrogatories; second, they move to compel Taser

to answer Williams Interrogatories 13-17 and 20-21, and Bates Interrogatories

18 and 20.[2]  The Court addresses each of Plaintiffs' requests in turn.

Insofar as Plaintiffs request leave to serve 20 additional interrogatories,

their motion is denied.  Without question, the Court has significant latitude to

allow the service of additional interrogatories beyond the 25 initially permitted

under Rule 33.  The Court declines to exercise that discretion in this case,

however, because Plaintiffs have made no showing that additional

---

[2] Plaintiffs initially moved to compel additional interrogatory responses, but have subsequently limited the scope of their Motion to Compel those interrogatories identified above.  (See Pls.' Supp. Mot. to Compel Br. at 12-13.)

interrogatories are necessary.  Indeed, beyond their simple assertion that this is

a "complex" case which "involves highly technical issues of proof" (Pls.' Supp.

Mot. to Compel Br. [212] at 13 (internal quotations omitted)), Plaintiffs have

neither shown what additional information they hope to obtain through written

interrogatories nor submitted their proposed additional interrogatories to the

Court for review.  As a result, the Court cannot evaluate the necessity of

additional interrogatories, and thus, the propriety of Plaintiffs' request.

Accordingly, Plaintiffs' motion for leave to file 20 additional interrogatories is

denied.

Having concluded that Plaintiffs will not, at this point in the litigation, be

granted leave to file additional interrogatories, the Court turns now to consider

whether Defendant Taser must answer those interrogatories already served.

Rule 33 provides that absent a court order or written stipulation of the parties, a

party may serve on each other party up to 25 written interrogatories, inclusive

of discrete subparts.  FED. R. CIV. P.  33(a).  Rule 33 does not, however, define

"discrete subparts," and the parties here dispute whether, when the various

subparts of Plaintiffs' interrogatories are considered, Plaintiffs have exceeded

the initial 25 interrogatories allowed under the Rule.

AO 72A
(Rev.8/82)

Courts have recognized that resolving the question of whether a subpart to an interrogatory is "discrete" under Rule 33 such that it should be counted separately can be a difficult task, see, e.g., Banks v. Office of the Senate Sergeant-At-Arms & Doorkeeper, 222 F.R.D. 7, 10 (D.D.C. 2004) (recognizing that identifying a "discrete subpart" under Rule 33(a) "has proven difficult"), and courts considering this question have applied various tests.  For example, some courts have applied a "related question" test, asking whether the particular subparts are "logically or factually subsumed within and necessarily related to the primary question."  See, e.g., Ginn v. Gemini, Inc., 137 F.R.D. 320, 322 (D. Nev. 1991).  If they are, then the subpart is not "discrete" within the meaning of Rule 33(a).  Other courts addressing this question have applied a different "discrete information" standard under which interrogatory subparts which seek discrete pieces of information must be counted separately for purposes of Rule 33(a).  See, e.g., Prochaska & Assocs. v. Merrill Lynch, Pierce, Fenner & Smith, 155 F.R.D. 189, 191 (D. Neb. 1993) ("if the interrogatories require discrete pieces of information, those interrogatories are to be counted as if the sub-parts were specifically itemized").

5

In the Court's view, the related question test is the better of the two. First, the related question test is consistent with Rule 33's Advisory Committee's Notes.  <u>See</u> Fed. R. Civ. P. 33 advisory committee notes to 1993 Amendment (stating that "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication").  Second, while the Court recognizes that answering interrogatories may be burdensome and that propounding numerous interrogatories may be used as a tool for harassment, it is of the view that an overly restrictive reading of Rule 33's numerical limit would too quickly exhaust the propounding party's supply of interrogatories, and unnecessarily limit that party's fact-gathering ability.  <u>Ginn</u>, 137 F.R.D. at 322.  Such a result would be not only inconsistent with both the broad discovery envisioned by the Federal Rules, but also their purpose of narrowing the factual issues to be resolved at trial and ensuring that all parties to litigation are possessed of relevant facts.  <u>See, e.g.</u>, <u>Shelak v. White Motor Co.</u>, 581 F.2d 1155, 1159 (5th Cir. 1978) (federal discovery rules are designed to narrow and clarify issues and

6

to give parties mutual knowledge of all relevant facts, thereby preventing surprise).

Applying the "related question" test to the Williams and Bates Interrogatories which served upon Taser, the Court concludes that Plaintiffs have not exceeded Rule 33's numerical limit. The Court's review of those interrogatories has convinced the Court that the subparts of each interrogatory are sufficiently related to the primary question to be counted as a single interrogatory. Accordingly, insofar as Plaintiffs' Motion seeks to compel responses to those interrogatories, that Motion is granted. Taser shall provide responses to Williams Interrogatories 13-17 and 20-21, and Bates Interrogatories 18 and 20, not later than twenty (20) days from the entry of this Order.

## II.    Plaintiffs' Second Motion to Compel Discovery

In their Second Motion to Compel, Plaintiffs raise a number of issues related to Taser's various objections to Plaintiffs' discovery requests, as well as Taser's failure to produce certain responsive documents on grounds that they are protected by either the attorney-client or work product privilege. The Court addresses each of these matters in turn.

7

### A.    Boilerplate Objections

To the extent that Plaintiffs wish to compel Taser to omit boilerplate objections from its answers to interrogatories and requests to produce, Plaintiffs' motion is granted.  Even a cursory review of Taser's discovery responses in this case reveals that its answers to Plaintiffs' discovery requests are, almost without exception, qualified by boilerplate objections to the relevancy of the discovery sought, the undue burdens associated with its production, etc.  While the Court appreciates Taser's desire to avoid waiving an otherwise legitimate objection by failing to assert it, such objections are improper under the Federal Rules.  As this Court has previously explained, "[m]erely stating that a discovery request is vague or ambiguous, without specifically stating how it is so, is not a legitimate objection to discovery." U.S.C.F.T.C. v. Am. Derivatives Corp., 2007 WL 1020838, *3 (N.D. Ga. Mar. 30, 2007) (Story, J.).  Rather, objections to discovery requests must be sufficiently plain and specific to allow the Court to understand precisely how the challenged discovery requests are alleged to be objectionable.  Id. (citing Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985)). What is more

8

> such non-specific objections operate to render the
> producing party the final arbiter of whether it has
> complied with its discovery obligations under Rule 26
> because the requesting party lacks sufficient
> information to understand either the scope of the
> objection, or to frame any argument as to why that
> objection is unfounded.

Id.

The problems which flow from such non-specific objections to discovery

requests are manifest in this case.  Taser's constant inclusion of such boilerplate

objections has unnecessarily clouded the discovery process and invited dispute

and disagreement by needlessly sowing doubt about the exhaustiveness of

Taser's production and responses.[3]  This is especially true in a case where, as

here, the information Plaintiffs require is in large part within Taser's sole

custody or control, and yet, Taser has been minimally responsive to Plaintiffs'

discovery requests.  The Court is determined to see discovery in this case

proceed in an orderly and expeditious manner, and will not consider any future

---

[3] The Court notes that in many instances it appears that Taser asserted numerous boilerplate objections and then proceeded to answer the interrogatory in question.  By proceeding in this manner, Plaintiffs are left to wonder if the response provided is complete, or whether the response is instead only partially complete and otherwise responsive information has not been produced on the basis of the asserted objections. Needless to say, this practice is the root of many of the discovery disputes in this case.

AO 72A
(Rev.8/82)

objection to discovery requests which fails to comply with the Federal Rules of Civil Procedure. Accordingly, Taser should refrain from asserting boilerplate, non-specific objections to Plaintiffs' discovery requests. If Taser believes that it has a legitimate objection, then Taser should plainly and specifically assert that objection not later than 10 days from the entry of this Order. If Plaintiffs believe Taser's objection to be unfounded, they may raise that matter with the Court. Otherwise, Taser should respond to Plaintiffs' discovery requests in accordance with the Federal Rules.[4]

### B.    Privilege

Insofar as Plaintiffs request that the Court deem any assertion of the attorney-client or work product privileges waived, their motion is denied. The Court will permit Taser to assert these privileges in this litigation, provided however, that they are asserted at the appropriate time and in the appropriate manner. That being said, the Court wishes to make clear that the "privilege log" Taser has produced to date is inadequate. Indeed, Taser's privilege log

---

[4] In addition, as the Court instructed at the May 21, 2007 hearing, Taser should refrain from asserting objections to what it perceives to be Plaintiffs' argumentative phrasing of their discovery requests, and instead reserve any objections for those matters genuinely contested by Taser so that Plaintiffs and the Court may identify and attempt to resolve any remaining discovery issues in this case.

10

consists of nothing more than a six-page table identifying ongoing litigation by name, court, and case number, and repeating verbatim for each and every entry that certain documents—namely, "[c]onfidential correspondence between employees of TASER and their legal counsel and all confidential materials prepared in anticipation of litigation"—have been withheld.  (See Pls. Second Supp. Mot. to Compel, Ex. 5 [215-7].)  This plainly fails to comply with the requirements of Rule 26.

In pertinent part, Rule 26 provides:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

FED. R. CIV. P. 26(b)(5)(A).  Taser's privilege log fails to describe the withheld documents in a manner that permits any meaningful assessment of the propriety of Taser's claim of privilege or protection.  Taser's privilege log has left Plaintiffs completely unable to determine which documents have been withheld, the basis upon which they have been withheld, and whether Taser's claim of

11

privilege or protection is legitimate.  As with Taser's non-specific objections to

Plaintiffs' discovery requests discussed above, by asserting an

unverifiable—and thus unassailable—claim of privilege, Taser has arrogated to

itself the power to determine the applicability of that privilege.  Of course, that

is not the way that discovery under the Federal Rules is designed to function,

and it is the Court—and not Taser—which is vested with that authority.

Accordingly, if at any time during this litigation, Taser withholds an

otherwise responsive document on the basis of privilege or other protection,

Taser shall provide Plaintiffs with a privilege log which complies with the

requirements of Rule 26(b)(5)(A).  The failure to comply with those

requirements will result in the waiver of any claim of privilege or other

protection.

## III.    Electronic Discovery

### A.    Email Database Search Protocol

A number of issues have arisen with respect to Taser's search of

electronic databases of internal communications.  In particular, the parties have

substantially disagreed about the manner in which the searches for responsive

documents contained within these databases will be performed.  In particular,

this disagreement has focused in large part on the timing of that production, the specific search terms that will be used, and the extent to which Plaintiffs will be allowed to participate in the search process.

During the May 21, 2007 hearing, the Court strongly encouraged the parties to collaborate on the development of search terms and a protocol for conducting those searches to winnow the universe of potentially responsive documents. Unfortunately, though perhaps not surprisingly, the parties have been unable to reach an agreement on a search protocol, and each has now submitted a proposed protocol for the Court's review.

Plaintiffs, for their part, request that they be permitted to actively participate in the search process at the Taser facility. Under Plaintiffs' proposal, Taser would make a computer with multiple screens available at its facilities, where Plaintiffs' counsel would appear and provide search requests to the Taser representative actually performing the database searches. The results of each of Plaintiffs' requested searches would be immediately reviewed for privilege, and Plaintiffs would then be provided access to any documents returned and to which no privilege objection was asserted.

AO 72A
(Rev.8/82)

Defendants adamantly oppose Plaintiffs' proposal, contending that Plaintiffs' counsel need not be present at Taser's facilities, that their presence would both substantially hinder Taser's ongoing business activities, and that Plaintiffs' presence would risk the disclosure of privileged information. Thus, Taser instead proposes that search terms be exchanged between the parties by email. Taser would then perform the searches using the stated terms, and report the number of documents retrieved to Plaintiffs, who would then have the opportunity to either accept the search or propose different search terms. If both parties accept a given search, Taser would then review the documents produced for privilege and produce all responsive, non-privileged documents. If, however, the parties dispute whether a given search is acceptable, then either may apply to the Court for review, and all searches would cease until the Court renders a decision.

In the Court's view, both proposals are deficient. Given the parties' history in this case, and their demonstrated inability to work together reasonably in an effort to resolve discovery disputes, the Court will not compel the parties to collaborate in the dynamic manner suggested by Plaintiffs. Similarly, the Court will not require the production to proceed in the manner

14

Taser proposes, which in the Court's view likewise invites dispute and additional delay.  Instead, the Court Orders the production of electronic documents and communications to proceed in the following manner.

    1.    Taser will conduct, at a minimum, searches of its email database using following terms:

    A)    "acidosis"

    B)    "cardiac" OR "respiratory"

    C)    "fibrillation"

    D)    "in-custody death"

    E)    "pre-existing" within 10 words of "condition"

    F)    "pre-existing" within 10 words of  "health"

    G)    "Frederick" OR "Williams"

    H)    "safe*" within same sentence as "X26"

    I)    "safe*" within same sentence as "M26"

    J)    "epilep*"

    K)    "mental*" within 5 words of "ill*"

    L)    "mental*" within 5 words of "condition"

    M)    "continu*" within 10 words of "discharg*"

N)   "repeat* within 10 words of "discharg*"

O)   "multipl*" within 10 words of "discharg*"

P)   "continu*" within 10 words of "expos*"

Q)   "repeat* within 10 words of "expos*"

R)   "multipl*" within 10 words of "expos*"

S)   "chest" within same sentence as "discharg*"

T)   "caus*" within same sentence as "death"

U)   "contribut* within same sentence as "death"

These searches will create a universe of presumptively responsive

documents.  From those presumptively responsive documents, Taser may

search for and preliminarily withhold as presumptively privileged any

communications between counsel and corporate principals or upper

management, provided however that the presumption of privilege shall not

apply to any communications also disclosed to opposing counsel in any

litigation, or where any other action has been taken with respect to those

communications which would result in the waiver of any claim of attorney-

client privilege or work product protection.  The Court will leave it to Taser to

design the protocol it wishes to use to identify presumptively privileged

16

documents.  However, Taser shall provide Plaintiffs with a complete description of the protocol utilized.

      3.    Taser shall produce to Plaintiffs all presumptively responsive documents, less any presumptively privileged documents, not later than thirty (30) days from the entry of this Order.  Taser may, however, review for privilege any presumptively responsive documents prior to their production.  If, after conducting that review, Taser should believe that the attorney-client privilege or work product protection applies to any document, then Taser may withhold that document subject to Taser's obligation to provide a privilege log which complies fully with the requirements of Rule 26(b)(5)(A).

      4.    Taser shall review all presumptively privileged documents and produce, on a rolling basis, any documents within this category to which the attorney-client privilege or work product protection does not apply.  For any presumptively privileged documents not so produced, Taser shall provide a privilege log which complies fully with the requirements of Rule 26(b)(5)(A). Taser's production of such documents shall be completed not later than forty-five (45) days from the entry of this Order.

AO 72A
(Rev.8/82)

5.    Any documents produced pursuant to this Order shall be considered confidential and subject to the Protective Order [125] which governs this case.  Paragraph 2 of that Order is hereby modified to apply to any documents or communications produced pursuant to this Order.

6.    Any documents produced pursuant to this Order shall be subject to the "clawback provision" set forth in Part III.B of this Order, infra.

7.    Taser shall not refuse to produce any document returned by the searches stated above on the basis of relevancy, undue burden, or any other ground not specifically provided herein without first obtaining a protective order from this Court.

8.    All documents produced pursuant to this Order shall be made available to Plaintiffs in a searchable, electronic form.

9.    The parties may, by mutual agreement, develop and employ search protocols which vary from those set forth above.  In the absence of such agreement, however, production shall proceed in the manner described above.

10.    If, upon completion of the production described above, Plaintiffs believe that an additional search of Taser's Email database is warranted, the Plaintiffs may raise that issue with the Court at the appropriate time.

The Court recognizes that the production ordered above will likely

impose burdens on both parties.[5]  Taser will likely be required to significantly

increase its privilege review capabilities;[6] Plaintiffs will likely be required to

wade through a significant number of documents.  Nevertheless, this case has

been ongoing for more than 18 months, and yet discovery has progressed little

and we remain far from its resolution.  Because that is the case, and because the

_____

[5] The precise nature of that burden is unclear from the filings before the Court. Taser has submitted various searches and the number of documents each retrieved. From the Court's review of these numbers, they appear to be inaccurate.  For instance, the Court notes that somehow a search for "in-custody death" returned significantly fewer documents than the more narrow search for "in-custody death" AND "X26" AND "M26" AND "contribute" AND "cause".

[6] In this regard, the Court takes this opportunity to address that Taser's capacity to search for and produce responsive documents, an issue that Taser has raised, either directly or indirectly, on a number of occasions.  Specifically, Taser has represented on more than one occasion that it has "[o]nly one TASER IT support staff employee . . . experienced in conducting electronic searches," and that "[d]ue to the numerous other responsibilities of TASER's IT staff . . . , this employee cannot dedicate 100% of his time to conducting electronic searches," but rather "must be able to attend to other pressing issues. . . ."   (Rivera Aff. [220-2] ¶ 9.)  At other times in this litigation Taser has represented that it retains only a limited number of attorneys who are capable of reviewing documents for privilege. Thus, Taser implies that because it has elected to hire and train only a single technology employee, and because it has chosen to retain only a handful of attorneys to conduct document review, it is somehow relieved from its obligations to timely respond to Plaintiffs' discovery requests.  That is not the case. Rather, the Court expects that Taser will make all reasonable efforts to comply with its discovery Orders including, if necessary, retaining additional IT professionals to search electronic databases and adding additional attorneys to perform document review.

19

parties have been unable to cooperate in the discovery process, the Court is compelled to Order the discovery procedures set forth above.

B.    **Clawback Provision**

The Court recognizes that the production of documents in the manner ordered above carries with it a risk that certain, otherwise privileged documents will be produced inadvertently.  Accordingly, it is hereby Ordered as follows:

1.    The inadvertent production of any document or other information during discovery in this action shall be without prejudice to any claim that such material is protected by any legally cognizable privilege or evidentiary protection including, but not limited to, the attorney-client privilege or the work product doctrine, and no party shall be held to have waived any rights by such inadvertent production.

2.    Upon written notice of an unintentional production by the producing party or oral notice if notice must be delivered at a deposition, the receiving party must promptly return or destroy the specified document and any hard copies the receiving party has and may not use or disclose the information until the privilege claim has been resolved.  To the extent that the producing party insists on the return or destruction of electronic copies, rather than

disabling the documents from further use or otherwise rendering them inaccessible to the receiving party, the producing party shall bear the costs of the return or destruction of such electronic copies.

3.     To the extent that the information contained in a document subject to a claim has already been used in or described in other documents generated or maintained by the receiving party, then the receiving party will sequester such documents until the claim has been resolved.  If the receiving party disclosed the specified information before being notified of its inadvertent production, it must take reasonable steps to retrieve it.  The producing party shall preserve the specified information until the claim is resolved.

4.     The receiving party shall have ten (10) days from receipt of notification of the inadvertent production to determine in good faith whether to contest such claim and to notify the producing party in writing of an objection to the claim of privilege and the grounds for that objection.

5.     The producing party will then have ten (10) days from the receipt of the objection notice to submit the specified information to the Court  under seal for a determination of the claim and will provide the Court with the

grounds for the asserted privilege or protection.  Any party may request

expedited treatment of any request for the Court's determination of the claim.

6.    Upon a determination by the Court that the specified information is

protected by the applicable privilege, and if the specified information has been

sequestered rather than returned or destroyed, the specified information shall be

returned or destroyed.

7.    Upon a determination by the Court that the specified information is

not protected by the applicable privilege, the producing party shall bear the

costs of placing the information into any programs or databases from which it

was removed or destroyed and render accessible any documents that were

disabled or rendered  inaccessible, unless otherwise ordered by the Court.

## IV.    Plaintiffs' Motion for Extension of Time to Complete Discovery

The Court has reviewed Plaintiffs' Motion for Extension of Time to

Complete Discovery, as well as Defendants' opposition to that Motion.  While

the Court acknowledges Defendants' desire for a date certain on which

discovery in this matter will close, the Court is of the view that discovery in this

case has proceeded far too slowly, far too contentiously, and too often required

this Court's involvement to resolve numerous discovery disputes.  In view of

that history, the relative paucity of information produced by Taser to date, as

well as the potentially significant amount of discovery which remains to be

completed, the Court is reluctant to fix an absolute date for the close of

discovery.  That said, the Court intends to see this case progress, and to see

discovery concluded in an expeditious manner.  Balancing the Court's

recognition with respect to the progress of discovery in this case with the

Court's stated desire to see this matter expeditiously resolved, the Court will

extend fact discovery in this case for an additional three (3) months from the

entry of this Order.

  With respect to expert discovery and disclosures, the party or parties

bearing the burden of persuasion on any claim shall prepare and serve the

expert disclosure(s) and report(s) contemplated by Federal Rule of Civil

Procedure 26(a)(2), and shall provide copies of all documents considered by the

expert(s) not later than Friday, August 31, 2007.  The opposing party or parties

shall then prepare and serve any expert disclosure(s) and report(s) contemplated

by Federal Rule of Civil Procedure 26(a)(2), for purposes of rebuttal or

otherwise, and shall provide copies of all documents considered by the expert(s)

not later than Monday, October 1, 2007.  Any depositions of experts shall be

conducted not later than Tuesday, October 30, 2007, on which date discovery in this matter shall close.

If, after exercising all reasonable diligence to meet the above deadlines, any party should conclude that additional time to complete discovery is warranted, that party should timely move for an additional extension of the discovery period, and support that request with a showing of good cause and due diligence.

### Conclusion

For the reasons stated herein, Plaintiffs' Motion for Discovery, Motion to Compel [144] is **GRANTED IN PART and DENIED IN PART**.  Plaintiffs' Motion is granted insofar as Plaintiffs seek to compel answers to Williams Interrogatories 13-17 and 20-21, and Bates Interrogatories 18 and 20.  Taser shall provide responses to said interrogatories not later than twenty (20) days from the entry of this Order.  Plaintiffs' Motion is denied insofar as Plaintiffs seek leave to serve additional interrogatories at this time.

Plaintiffs' Second Motion to Compel Discovery from Defendant Taser International, Inc. [172] is **GRANTED IN PART and DENIED IN PART**. Plaintiffs' Motion is granted insofar as Taser is Ordered to omit boilerplate

24

objections and to provide a privilege log which complies with Rule 26(b)(5)(A).

Plaintiffs' Motion is denied insofar as Plaintiffs request that the Court deem any

assertion of the attorney-client or work product privileges waived.

Plaintiffs' Motion for Extension of Time to Complete Discovery [201] is

**GRANTED**.  Fact discovery in this case shall be extended for a period of three

(3) months from the entry of this Order.  Expert discovery shall close on

Tuesday, October 30, 2007.  Further extensions will be granted only upon a

showing of good cause and due diligence by the moving party.

**SO ORDERED** this __4th__ day of June, 2007.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

25